# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

FILED
Scott L. Poff, Clerk
United States District Court
By casbell at 4:01 pm, May 17, 2017

JEFFREY WITTIG,

    Plaintiff,

v.

CSX TRANSPORTATION, INC.,

    Defendant.

CV 416-50

## ORDER

Pending before the Court is Plaintiff Jeffrey Wittig's ("Plaintiff") Motion for Summary Judgment (Dkt. No. 24) and Defendant CSX Transportation, Inc.'s ("Defendant") Motion for Summary Judgment (Dkt. No. 29). The motions have been fully briefed and are now ripe for the Court's review. For the reasons set forth below, Defendant's Motion for Summary Judgment (Dkt. No. 29) is **DENIED** and Plaintiff's Motion for Summary Judgment (Dkt. No. 24) is **DENIED**.

## BACKGROUND

Defendant is a railroad-carrier corporation providing services throughout the United States. Dkt. No. 1 ¶ 2. Plaintiff worked as an engineer for Defendant at all times relevant in the Complaint. Id. ¶ 9. On June 10, 2014,

Plaintiff was the engineer of a train leaving Savannah, Georgia and traveling to Cayce, South Carolina. Plaintiff was accompanied by his conductor, Martin Hester ("Hester"), who administered the operation of the train. Dkt. No. 25 p. 1. Plaintiff was responsible for the actual operation of the train. Dkt. No. 29-4 p. 34-37. Defendant's trains utilize speed-management software called a "Trip Optimizer." Dkt. No. 29-3 ¶ 9. The Trip Optimizer works in essentially the same fashion as a cruise-control device and is designed to keep the train at a set speed. Id. ¶ 10. However, like a cruise-control device, the Trip Optimizer may be turned off and on at the user's discretion. Id. ¶ 9.

On the day in question, Hester had used the Trip Optimizer to regulate the train's speed. Dkt. No. 29-5 pp. 15-17. Nonetheless, Plaintiff was still required to ensure the train did not exceed its speed limitations. Dkt. No. 29-4 p. 15. In addition, company regulations provided that the Trip Optimizer should not be the primary method of operating the train, but a supplemental method. Dkt. No. 29-3 ¶ 12. Nonetheless, Plaintiff was required to use the speed optimizer. A speed restriction of 10 mph existed starting just after the beginning of Savannah River Bridge. Dkt. No. 29-3 ¶ 15. Both Plaintiff and Hester were aware of this speed restriction. Dkt. No. 29-4 p. 37; Dkt. No. 29-6

pp. 32-33. A warning board[1] existed two miles before the low-speed zone which reminded both Plaintiff and Hester of this restriction. Dkt. No. 29-4 p. 12; Dkt. No. 29-6 p. 59. Hester informed Plaintiff that the Trip Optimizer accounted for the 10-mph limit. Dkt. No. 29-4 p. 37; Dkt. No. 29-6 p. 60. The train did begin to slow within the next two miles, but not at the rate needed to meet the impending speed restriction. Dkt. No. 29-6 p. 60. Indeed, the train failed to slow to the required speed limit. Plaintiff applied the brakes prior to reaching the speed-restricted zone, but only reduced the speed to 23 mph. Dkt. No. 29-4 p. 38; Dkt. No. 29-6 pp. 73-74.

On June 11, 2014, Plaintiff and Hester reported to their supervisor that the Trip Optimizer had malfunctioned, such that the train had entered a speed-restricted zone 13 mph over the speed limit and the brakes had been forcibly applied. Dkt. No. 29-6 pp. 73-74. After an administrative hearing reviewing the incident, both Plaintiff and Hester were suspended. Dkt. No. 29-1 p. 9. Plaintiff now asserts that Defendant retaliated against him for reporting a safety violation under the Federal Rail Safety Act ("FRSA"). Dkt. No. 25 p. 2.

---

[1] A warning board is a sign placed along the tracks in order to warn train conductors and staff of dangers and speed limitations.

## LEGAL STANDARD

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

Where the nonmovant instead attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). When, as here, the parties have filed cross-motions for summary judgment, the applicable Rule 56 standard is not affected. See Gerling Glob. Reinsurance Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233-34 (11th Cir. 2001). "[T]he facts are viewed in the light most favorable to the non-moving party on each motion." Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

**DISCUSSION**

Both parties now move for summary judgment on the issue of whether Defendant retaliated against Plaintiff for reporting a safety violation. Specifically, Plaintiff asserts that he was suspended because he reported the malfunctioning Trip Optimizer and is protected as a "whistleblower" under the FRSA. Dkt. No. 25. p. 2. Defendant, on the other hand, argues that Plaintiff's suspension was unrelated to his report of the possibly faulty Trip Optimizer. Dkt. No. 41. p. 4. Instead, Defendant argues Plaintiff was suspended for failing to prevent violations of Defendant's safety policies. Id.

AO 72A
(Rev. 8/82)

The FRSA prohibits a railroad from retaliating against an employee for, among other things, reporting a work-safety condition. 49 U.S.C. § 20109(b)(1)(a). To establish a retaliation claim under the FRSA, a plaintiff must show: (1) engagement in protected activity; (2) discharge or discrimination in the terms or conditions of employment; and (3) that the protected activity was a contributing factor in the adverse employment action. Majali v. United States Dep't of Labor., 294 F. App'x 562, 566 (11th Cir. 2008); see also Allen v. Admin. Rev. Bd., 514 F.3d 468, 475-76 (5th Cir. 2008) (stating as a separate element of the prima facie case that the employer must be aware that the employee engaged in protected activity). If the employee establishes a prima facie case of retaliation, the burden then shifts to the employer to prove by clear and convincing evidence that it would have taken the same unfavorable personnel action in the complete absence of the plaintiff's protected activity. Majali, 294 F. App'x at 566-67. The plaintiff's protected activity is a "contributing factor" in the unfavorable personnel action if it tended to affect the outcome of the decision. Consolidated Rail Corp. v. U.S. Dep't of Labor, 567 F. App'x 334, 337 (6th Cir. 2014); see also Ameristar Airways, Inc. v. Admin. Rev. Bd., 650 F.3d 562, 567 (5th Cir. 2011).

AO 72A
(Rev. 8/82)

In this case, there is no question that Plaintiff engaged in a protected activity. Nor is there a question as to whether he was subject to an adverse employment action. Instead, the issue is whether or not that engagement in the protected activity actually contributed to his suspension. There is no question that reporting a hazardous safety condition is protected by the FRSA. 49 U.S.C. § 20109(b)(1)(a). This does not mean, however, that Plaintiff could not be suspended for failing to prevent that condition. The Trip Optimizer was not a device that was completely out of the control of Plaintiff. Dkt. No. 29-3 ¶ 9. Instead, the device functions much in the same way as a cruise-control device works on a car. Like the driver of a car, the Plaintiff was not absolved of his responsibilities to operate a vehicle safely simply because the equivalent of cruise-control was turned on. Plaintiff himself testified as much in his deposition, stating: "When I'm on the train and [the Trip Optimizer is] operating I'm, I have a role . . . to play. That is to make sure [the train is] operating correctly and complying with all the speed restrictions . . . by making sure [the train is] running the appropriate speed." Dkt. No. 29-4 15:15-24.

Plaintiff centers on the argument that had he not reported the incident on June 10, 2014, he would not have

been suspended. Dkt. No. 25 p. 5. However, the Eleventh Circuit has long held that an employee cannot immunize his own misconduct simply by reporting it and taking advantage of whistleblower protections. <u>Fields v. U.S. Dep't of Labor Admin. Rev. Bd.</u>, 173 F.3d 811, 814 (11th Cir. 1999). To hold otherwise would mean that incompetent employees could simply report their own incompetence to avoid discipline through the threat of a retaliation claim. This is plainly not the purpose of whistleblower protections. <u>Ramsey v. Bd. of Regents of Univ. Sys. of Ga.</u>, No. 1:11-CV-3862, 2013 WL 1222492, at *21 (N.D. Ga. Jan. 30, 2013). As such, Plaintiff is not entitled to summary judgment.

Nonetheless, Defendant is not entitled to summary judgment either. While Defendant argues that Plaintiff has provided no evidence of discriminatory intent in reprimanding Plaintiff, Plaintiff need not point to a smoking gun to survive summary judgment. The record is undisputed that Plaintiff reported a safety violation and he was immediately reprimanded. A reasonable factfinder could rely on this close temporal proximity to find for the Plaintiff. <u>Collins v. Beazer Homes USA, Inc.</u>, 334 F. Supp. 2d 1365, 1379-80 (N.D. Ga. 2004). In <u>Collins</u>, the court considered a plaintiff's whistleblower claim under the Sarbane's-Oxley Act. <u>Id.</u> at 1373. Acknowledging the

scarcity of case law regarding Sarbane's-Oxley, the court applied the same evidentiary framework present in similar whistleblower statutes such as the Wendell H. Ford Aviation Investment Reform Act for the 21st Century ("AIR 21"). Applying this framework, the court found that a two-week period between engagement in a protected activity and the adverse employment action was "sufficient to establish circumstances which suggest that protected activity was a contributing factor to the unfavorable personnel action." Id. at 1379-80.

As in Collins, the Court borrows the evidentiary framework from AIR 21. This is proper because "[t]he FRSA incorporates by reference the rules and procedures applicable to (AIR-21) whistleblower cases." Araujo v. New Jersey Transit Rail Operations, Inc., 708 F.3d 152, 157 (3d Cir. 2013). In this case, Plaintiff's engagement in a protected activity and the adverse action were nearly contemporaneous, as he faced disciplinary action immediately after reporting the problem with the Trip-Optimizer. This immediate temporal proximity between Plaintiff's report and disciplinary action, similar to the two-week period in Collins, is sufficient to create a genuine issue of fact as to causation.

AO 72A
(Rev. 8/82)

9

In addition, a genuine issue of material fact exists as to why Plaintiff was suspended-poor performance or the reporting of a safety violation. Defendant does present evidence that perhaps Plaintiff could have stopped the train within a one-minute window. Dkt. No. 46 p. 3. Yet, the Court notes that if there is an issue of fact as to whether Plaintiff's protected activity even *contributed* to his suspension, he may survive summary judgment. Majali, 294 F. App'x at 566. Even assuming Plaintiff did not react quickly enough, as Defendant asserts, the Court cannot determine whether or not his suspension was due purely to poor performance or if Plaintiff's protected activity tended to affect the outcome of the decision. Further, Defendant has not presented clear and convincing evidence that it would have taken the same action in the absence of the protected behavior. Therefore, both summary judgment motions will be denied.

## CONCLUSION

For the reasons stated above, it is hereby ordered that Defendant CSX Transportation, Inc.'s Motion for Summary Judgment (Dkt. No. 29) is **DENIED** and Plaintiff Jeffrey Wittig's Motion for Summary Judgment (Dkt. No. 24) is **DENIED**.

**SO ORDERED,** this 17th day of May, 2017.

/s/ Lisa Godbey Wood
LISA GODBEY WOOD, DISTRICT JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA